Good morning. The first case is 4-15-0677. Ryan Bandy, appellant, v. Kent Delay, et al., appellees. Appearing for the appellant is attorney David Patrick Hall. And for the appellees, attorney David Reed. Good morning. Good morning. All right. Mr. Hall, are you ready to proceed? Yes, sir. You may. Good morning. May it please the court, I'm David Hall here on behalf of the plaintiff and appellant in this case, Ryan Bandy. Mr. Bandy is currently the sole owner of RPR Clubs, LLC, which operates a bar called, known as Club Station House here in Springfield. Mr. Bandy has been the sole owner of RPR Clubs, LLC, since October of 2010. And has run the bar by himself since it opened in late October of 2010. And we're here today basically to determine whether he can continue to own and operate that business, or whether he's required to transfer 70% of the ownership to the defendants in the case, Kent Delay and Rand Steren. That was the ruling of the circuit court in granting summary judgment to the defendants with regard to a purchase option. The case primarily revolves around two agreements that Mr. Bandy entered into with Mr. Delay and Mr. Steren. The first was the purchase agreement that was entered into October 18th of 2010, whereby Mr. Bandy purchased the ownership interest of Mr. Delay and Steren for $20,000 and gave them a promissory note in that amount. The second agreement that we'll primarily be talking about is an assumption of liability agreement with regard to a loan to Mr. Delay and Mr. Steren from Jim Cousin, whereby they had borrowed $8,000 from Mr. Cousin for their investment into the LLC. And Mr. Bandy, later in February of 2011, assumed responsibility for repayment of that note. And it was to be credited against the initial $20,000 promissory note that he owed Mr. Delay and Mr. Steren. Mr. Bandy has raised three issues in this appeal. First, the plain language of the purchase agreement gives him the paramount right to go ahead and complete the purchase agreement transaction, repay the promissory note to Mr. Delay and Mr. Steren, and basically complete the transaction that was provided for in that agreement. The second issue is that if Mr. Delay and Mr. Steren did have an option, that they had waived that option by demanding repayment in full of the whether Mr. Delay and Mr. Steren have ever validly exercised any option that they might have had, because we argue that they have failed to strictly comply with the conditions of the option which is required in Illinois in order to exercise an option. The case basically began in 2010. There was a bar known at that time as Station House here in Springfield, and Mr. Delay and Mr. Steren, along with Mr. Bandy, decided they wanted to reopen the bar and form RKR Clubs in order to operate the business. In getting licensed, they found out that due to Mr. Delay and Mr. Steren having some tax liabilities outstanding that the Illinois Corporation for Illinois Department of Revenue was not going to allow the company to obtain a liquor license. Therefore, they at that point entered into this purchase agreement whereby Mr. Bandy purchased the interest owned by Mr. Delay and Mr. Steren. At that point, when they entered into that, the bar was not yet open. Obviously, they didn't have a liquor license and were not operational. Shortly after the purchase agreement was entered into, Mr. Bandy did go ahead and obtain a liquor license as the sole owner of the LLC began operating the bar. As noted earlier, Mr. Delay and Mr. Steren had borrowed $8,000 from Jim Cousin for their investment into the business, and they had payments that they were required to be making to Mr. Cousin. They were having difficulty making those payments, so in February of 2011, the parties entered into another agreement whereby Mr. Bandy would assume responsibility for those payments with the amount credited against the amount he owed on a promissory note, or if Mr. Bandy what he had paid Mr. Cousin on behalf. Again, our first issue really is that the plain language of the agreement gave Mr. Bandy the superior right to go ahead and repay the promissory note and complete the purchase of the interest of Mr. Delay and Mr. Steren. The document itself is called the Purchase Agreement, and the main focus of the document is to provide for the purchase by Mr. Bandy of the interest of Mr. Delay and Mr. Steren. In paragraph 7 of that agreement, it provides that nothing in this Purchase Agreement shall restrict the ability of Bandy to satisfy this obligation by fully repaying such amounts due under the promissory note with interest to date at which time the option for cancellation of indebtedness shall be terminated. Now the defendants have complained that Mr. Bandy is relying on a single sentence that they say is buried in paragraph 7 of the agreement. The problem with that is that the option that the defendants rely on also consists of a single sentence also in paragraph 7. As paragraph 7 of the agreement consists of two sentences, the first giving this possible repurchase option to Mr. Delay and Mr. Steren, and the second is the one that they say is buried in paragraph 7 that says nothing shall restrict Mr. Bandy's ability to repay the promissory note and complete the transaction. I think the argument that it's somehow buried in paragraph 7 misses the point that the beginning part of the first six paragraphs of the Purchase Agreement deal with the purchase of the interest by Mr. Bandy, and that was the main focus of that agreement. When we get to paragraph 7, we're talking about providing an option possibly for Mr. Delay and Mr. Steren to come back. But again, that's qualified by the fact that Mr. Bandy was given a superior right to go ahead and complete the transaction, repay the promissory note, and that's what he would like to be able to do. The defendants have argued that the language we rely on, that this portion of the language we rely on should apply only, and that's the part that they've added and underlined in their brief, only in the event that Delay and Steren do not exercise their option. Of course, if that was the intent, rather than saying nothing shall restrict, the contract would have said that in the event that Delay and Steren do not exercise their option, Mr. Bandy shall have the right to go ahead and complete the transaction. I think when you look at the arguments of the parties, the defendants don't really argue that the agreement provides something other than what we say. They just ask that due to the fact that it's allegedly buried in paragraph 7, that the court ignore that language or that the court basically substitute other language based on an email that Attorney Tony Delgiorno sent shortly before the purchase agreement was entered into by the parties. The issue with the Delgiorno email is that, first of all, Mr. Delgiorno, when he sent that, said I have an idea I want to pitch to you. And that's what the defendants have argued should be accepted as a replacement for the actual language of the agreement that the parties signed. The problem is there's no emails from Mr. Bandy or from Mr. Delay or Mr. Steren telling Mr. Delgiorno that yes, that's the agreement that we want. The agreement that they actually signed three days later is a slightly different agreement with obviously more detail in the provision as to how the transaction is to proceed. One other thing to be considered with regard to the Delgiorno email is the defendants attempted to cast this as though everything was going great in October of 2010 and it was just a matter of time until they were able to come back into business. But to give some context of what was actually going on at that time, on October 14th of 2010, Mr. Delay, and this is the day prior to the Delgiorno email, Mr. Delay had submitted to Mr. Bandy a resignation letter resigning from the Limited Liability Company. And this is in the record at C-97 and I believe in the appendix at A-54. But in that, Mr. Delay, you know, details some health issues he's facing and also notes that the house that he shares with Mr. Steren is in badly in need of numerous repairs for the roof and the porch and various other issues. And again, talks about the stress of the past year and the toll it's taken on his health. So I think it's important just to realize, you know, going back to October 2010, you know, the defendants were ready to be out of this business. You know, they had just failed at the same business at the same location with a different partner earlier in the year and now they're in a situation where they can't obtain a liquor license. So, you know, the purchase by Mr. Bandy, you know, was an entirely reasonable transaction or activity for the parties to agree on at that time. And under the circumstances, the fact that Mr. Bandy has given me, you know, a superior right to go ahead and repay the note, I think is entirely reasonable. You know, one other thing I'd like to point out with regard to that is had the business failed, Mr. Bandy had no ability to force Mr. Delay and Steren to forgive the note. If the business had failed, they would be holding the $20,000 promissory note looking for payment. He had no ability to say, well, if the business fails, forgive that note and you can have, you know, you can have back your ownership interest in a failed business. So essentially neither party had the ability to force the other to forgive the note. But Mr. Delay and Mr. Steren obviously had the ability to force Mr. Bandy to repay the note and it's our position that, you know, that having the rights granted to him under Paragraph 7, Mr. Bandy also had the ability to, you know, essentially force Mr. Delay and Steren to accept payment on the note and complete the purchase agreement. The next issue I wanted to touch on was the waiver issue. And that we based primarily on a letter that was sent to Mr. Bandy in July of 2011. So about five months after Mr. Bandy had signed the assumption of liability, whereby he assumed responsibility for repayment of the $8,000 that Mr. Delay and Mr. Steren had borrowed from Jim Cousin. And this is in the record at C-60 and it's also in the appendix. I apologize if I don't have the appendix page number. But anyway, this is a July 12, 2011 letter that Mr. Delay and Mr. Steren sent to Mr. Bandy demanding repayment in full of the promissory note. It's our position now that once they've done that, they can no longer obviously forgive any portion of the indebtedness because a waiver can be affected by conduct inconsistent with enforcing a right. And once they've demanded repayment in full of the note, they no longer have the ability to simultaneously forgive any portion of that note. Was the demand, did it coincide with a particular time frame? Was there a deadline by which a response was to be made? They said to pay it within seven days or that they would pursue legal action, which Mr. Bandy in his affidavit said that due to the fact that they had not credited the Cousin loan, that he decided that he would wait and wait and hear from their attorney at that point, which obviously he never heard from their attorney. They didn't take any further action on that. And then Mr. Bandy, at that time, he was repaying the Cousin loan throughout this time period and then continued obviously after receiving this demand to repay that Cousin loan and completed the payments I believe in February of 2012. So the circuit court basically rejected or didn't, I guess essentially ignored the demand and said it didn't have any effect since Mr. Bandy took no action. We would disagree with that result for a couple of reasons. One being that once they've made the demand, it's not that relevant with what Mr. Bandy did. The fact that they didn't follow through with their threat to pursue collection activities doesn't wipe out the fact that they've made the demand and that they can no longer forgive the loan. The second thing is that we think it also ignored the fact that Mr. Bandy did in fact continue paying the Cousin loan on behalf of Mr. Gladys after that time. And those payments effectively were payments toward the principal because the payments he made there were to be credited against the promise to write note under that agreement. The third issue that we had raised was that even if Mr. Gladys and Mr. Serin did have an option to forgive the indebtedness and reacquire their ownership interest, that they've never made valid exercise of that option. In order to exercise an option, a party must strictly comply with the terms and conditions of the option. One of those terms and conditions after the execution of the Assumption of Liability Agreement was signed was that they reassume liability for that loan and reimburse Mr. Bandy for the payments he'd made. That was never done by Mr. Gladys and Mr. Cousin at any time. In fact, the only person that's ever proposed or suggested that they reimburse those amounts was Judge Perrin in his order where he said that they could do that. But Mr. Gladys and Mr. Cousin had never proposed or offered in any way to do that. In fact, the February 16, 2012 letter from Attorney Pete Naylor that Judge Perrin found was a valid exercise of their option, when Mr. Naylor was later advised of the existence of this Assumption of Liability Agreement, his next response essentially withdrew their demand to reacquire their ownership interest and just said, obviously you don't want to be in business with us, why don't you just give us some more money and we'll forget about it. So Mr. Gladys and Mr. Cousin have never acknowledged that agreement or offered or proposed in any way to pay it. In fact, in paragraph 6 of their answer to the complaint in this action, they denied that it was a loan to them claiming it was a loan to RKR Clubs, when in fact the evidence in the record, as we set out at some length in our brief, clearly shows that Mr. Cousin made the loan to them. They signed a note to Mr. Cousin and the reason the funds were deposited into the RKR account was that it was for their investment into the company and that was acknowledged again in the Assumption of Liability Agreement that this was their investment in the company and Mr. Bandy was now assuming responsibility for that. And then once that agreement was signed, Mr. Gladys and Mr. Cousin had recouped all of their monetary investment into the company. In April of 2011, they also sought and received a reimbursement for some of their miscellaneous expenses, but that was their net investment into the company. I say I'm out of time, but thank you for your attention. Thank you, Mr. Hall. Mr. Reed. Good morning. David Reed for Appellees DeLay and Steeran. Mr. Cantillay is here today. Counselor, may it please the Court. Initially, I want to note that Mr. Hall stated that the trial court did not address the waiver issue, but the appellees assert that the trial court ruled that since the option was exercised first by Mr. DeLay and Mr. Steeran, they flipped the switch first, so the trial court honored the repurchase option. And that's on pages 107 and 108 of the appendix to appellee's brief. The appellees assert that this case is really about an agreement, breach of the agreement, bad faith by the appellant, and then five years of stonewalling. The appellees listed or presented five issues to the court on page four of their brief. Of these, the issues which I intend to argue today regarding whether the appellees could exercise their option to purchase and did so on February 16th, that's issue one. Issue two is the waiver issue. And then issue four is whether the motion for summary judgment, affidavits, and case record show that there are no material facts, issues of fact, that preclude summary judgment on this issue. The trial court granted an order filed March 23rd, 2015, which granted the motion for summary judgment filed by DeLay and Steeran. We respectfully request that the court affirm this judgment order. Also, in addition to these issues, there are some additional issues that arose late through the motions to strike brief and objections thereto. We understand that these issues may not be under the doctrine of abstention. The court may not rule on these issues. At the same time, appellees initially approached this case that if we got through the contract issue first and then deal with damages and other issues later, that would be a more judicious way to proceed. I believe there was an agreement to that effect, but apparently not. At some point in time, we intend to bring an equitable action or some action to address losses by the appellees for the delay in bringing this exercise of option together. In other words, the exercise of option was in 2012, and here we are today, four years later. During that time, my clients have received no benefit from the corporation, no salaries, no tax benefits. We think there's an equitable issue there that can be raised. We agreed to the Rule 304A order for the reason that we thought it was necessary to bring that issue to this court or resolution before we pursued the other issue, but apparently there's a disagreement on that point between the parties. Is anything you just said before us of this appeal now? Pardon me? Is anything you just said, does it reflect some issue that we have to address and resolve in the appeal before us now? No, sir. You just want to give it as just kind of an interesting observation here? Well, I just don't want to be, I want to bring this out, and I want, you know, at some point I expect that there will be another proceeding and another hearing. And why does that matter to us in this appeal? I understand, Judge. I apologize, but those are a part that motion to strike and objection were filed in the case. I just wanted to address those. Let me proceed here, if I might. With respect to the first issue, the purchase agreement, whether it was a valid contract and whether there was an option to purchase, the purchase agreement was a valid contract and delay and steer an exerciser option to repurchase the interest. There was an offer, acceptance, and consideration for the October 18, 2010 purchase agreement. Delay and steer an exerciser option, both on October 15, 2011 and February 16, 2012. There was consideration for the transaction. The exercise, the contract for exercise of the option was, there were no procedures, no time frame or anything. That could have been better worded. But at the same time, it gave them the right to exercise their option and they did so. They did so on February 16, 2012 and as a result were entitled to repurchase their interest in the corporation. The validity of the contract is supported by both case law and restatement second of contract law. Those have been cited in my brief. Further, the provisional admissions approach, which allows parole evidence in this case and allows the email of Tony DelGiorno shows that there was a plan in place and the parties acted on that plan three days later. We think that also goes to prove the intent of the parties. The agreements to the purchase agreement and the assumption of liability agreement were separate contracts. There were different parties involved in the contracts. There was a different time frame. And while there was reference to the two documents, they were separate contracts and the court treated them as separate contracts. The exercise of the repurchase option is a factual issue and the letter dated February 6, 2012 is proof of this fact. For all these reasons, the trial court was correct to find that there was an option to repurchase and the appellees did so. With respect to issue two and the waiver issue, this is probably the strongest argument, I think, for the appellant. But the court looked at this issue and there was no, as we argue in our brief, there was no express waiver. There may have been an implied waiver if a person's conduct is inconsistent with an intent to enforce a right. But the law is clear that an appellant carries the burden of proving a clear, unequivocal, and decisive act by delay and steer in manifesting an intention to waive its right. We don't believe the letter from Mr. Delay and Steering did that. Also, there was no consideration for any waiver. Further, the conduct of appellant constituted anticipatory breach, as outlined in our brief. The actions of Delay and Steering did not provide false assurance that strict compliance with the contract will not be required. There was a seven-day action, seven-day window for Mr. Bandy to act. He didn't do so. There was no repudiation by Delay and Steering. And Mr. Bandy has shown no detriment as a result of his letter and the seven-day purchase period. With respect to issue number four, whether the motion for summary judgment affidavits and case record were sufficient to grant the defendants and counter plaintiffs summary judgment motion, we believe that the appellees have done so. We believe there are no material issues of fact that have not been resolved or which would preclude summary judgment. The appellant argues that there are many open factual issues, but none of these are material. Also, appellant has shown an inconsistent pattern in the case. First, appellant filed a motion for summary judgment himself, but now contends there are too many disputed facts. The appellant has not, in our view, delineated the disputed material facts which defeat a motion for summary judgment. On this point, remember the essential material facts of this case are primarily exhibits attached to the record, and these are subject to interpretation by the court, and there are not open issues of material facts. Further, there is the Giorno plan which outlines how this transaction would take place, and the appellees argue or assert that the appellees followed this plan, but to their dismay found out that it was rejected in the end by Mr. Bandy. With respect to whether the employment contributions were taxes, I think the appellants have conceded that issue. With respect to whether the issue raised by appellee regarding the unilateral serial pleadings filed by Mr. Bandy, whether they are part of the record on appeal, we freely admit that we did not file a notice of appeal for the reason that we feel we won the case. There was no need to file a notice of appeal. At the same time, we think there is some authority under Holcamp Trucking Company, which this court has issued. If the court wants to address this issue for purposes of future guidance to litigants, we welcome said comments. At this point, we would ask that the court, or at the end of the day, the court find that this case is about an agreement made by the parties which was not upheld by the appellant. We believe there was opportunism and bad faith by the appellant in this matter. My clients are entitled to rely on the contract and enforcement on the contract. We believe that the presumptions in the case due to the trial court's decision support appellees. At the end of the day, we would like the court to deny appellant's motion to strike, which has been filed in this case. We would ask that the court affirm the trial court decision and realize that the option was exercised on February 16, 2012. It would be our intent that there would be nothing in any kind of order that precludes my clients from bringing some future action. Although I understand Justice Steigman's concern on that issue. I think that in the final analysis that this case, again, is about a failed business agreement through no fault of my clients. We believe that the purchase agreement and the judgment order entered March 23rd by the trial court Judge Perrin should be affirmed. Thank you for your time. Thank you. Mr. Hall, rebuttal argument. I'm trying to hit as many of these as I can. With regard to the trial court's finding that whoever flipped the switch first would win, the problem with that is that that language doesn't appear in the agreement anywhere. There's nothing that says whoever flipped the switch first or whoever goes first wins. It says that nothing shall restrict Mr. Bandy's ability to repay his promissory note. With regard to the exercise of the option, I believe Mr. Reed has just changed the argument that he made in his brief. In his brief, they didn't really attempt to defend the exercise of February 16, 2012. Their whole argument was focused on an argument that they had exercised on October 15, 2011. We pointed out in our brief that failed for a few reasons. One being that that would have been premature because they couldn't exercise the option until at least one year had elapsed. That would have been just prior to a year elapsing from the purchase agreement. Also, that one, they just requested to meet to renegotiate them reentering the business. It would fail for that reason as well. I think that also acknowledges that if they were going to come back into the business, it basically required the consent of the parties. Whereas, if they were going to repay the note, either party could require that. With regard to disputed facts, there were several disputed facts that Hapoliz actually listed in their brief with regard to several issues. I think that some of the affidavits of Mr. Bandy and Mr. Cousin that the circuit court disregarded do raise some disputed facts. With regard to whether there was a need for the defendants to file an appeal because they felt like they'd won, it's kind of similar. We've cited the Greco v. Coleman case where their party had asked the appellate court to change the date on which post-judgment interest would begin to approve. The appellate court found that having not filed a cross-appeal, they couldn't ask for that change in the effective date. I think that's a lot like the defendants here asking this court to change the date that they exercised their option. Mr. Reed mentioned that this court should rely on the presumptions that arise from the circuit court's ruling. I don't think any presumptions do arise. There was a summary judgment ruling reviewed in OVO. In the response to the motion, which I want to touch on briefly, Mr. Reed had suggested that the standard of review that he had cited in his brief should actually be changed to the manifest weight of evidence for some of the issues for the trial court's factual findings. I don't think that's correct in the context of a summary judgment. The case law is pretty clear that in a summary judgment, proceeding the trial court is not to determine any disputed factual issues. So Mr. Reed, correct, you moved for summary judgment yourself? Yes. Are you arguing that there are no genuine issues of disputed material fact and dispute? Well, we felt that there were with regard to the contract interpretation that we argued, but I think a case to say just because both parties moved for summary judgment doesn't necessarily mean that there are no. Isn't it somewhat inconsistent for you to be arguing now in appeal that there were confiscated issues of material fact when you were in movement at the trial level? No, I don't think it is with regard to the fact that we argued, I mean, based on the plain language of the contract, and if you go by just the plain language of the contract, the facts that are disputed don't really have any relevance because those only come into play if you get beyond the plain language and say that they did have an option and now you're questioning whether they waived it or whether they were valid exercises. I think that's where you come into questions, factual questions. If I've got time, I would like to address the motion very briefly in that we raised that because we felt there was improper matter in the brief and also the defendants requested relief that they had not preserved by cross-appeal. Mr. Reed has said that that was a questionable ethics for me to do that and he bases that, I think he attached an email from October 23, 2014 saying something about we would wait on discovery until after the contract issue was resolved. The problem with that, if you look in the record, on October 31, 2014, eight days later, Mr. Reed served me with interrogatories and requests produced. The idea that there was some type of agreement to wait on discovery, if that was the case, he violated his own agreement eight days later and then prior to the summary judgment hearing, he had filed a motion to compel.  I think the agreement he alleged is one to ignore the rules of appellate procedure, which I don't think we could have agreed to anyway that he could raise those issues in the latest date. All right. Thank you, Mr. Hall. Thank you, counsel, both. The case will be taken under advisement and a written decision shall issue.